**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLES K.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[2]<br><br>Defendant. | No. 25cv16982 (EP)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Charles K., who suffers from multiple mental impairments, appeals the Social Security Administration's ("SSA") denial of supplemental security income ("SSI") pursuant to the Social Security Act (the "Act").[3] D.E. 2 ("Complaint" or "Compl."). For the reasons explained below, the Court will **GRANT** the appeal, **VACATE** the SSA's denial, and **REMAND** for further proceedings consistent with this Opinion.[4]

---

[1] To protect the privacy interests of plaintiffs in social security cases, the Court adopts the recommendation of the Judicial Conference of the United States to refer to plaintiffs in social security cases by their first name and last initial. *Veronica D. v. Comm'r of Soc. Sec.*, No. 24-1326, 2025 WL 2665313, at *8 (M.D. Pa. Sept. 17, 2025).

[2] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[3] 42 U.S.C. §§ 1381–1383f.

[4] The Court decides the appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

# I. BACKGROUND

## A. Plaintiff's SSI Application

Plaintiff filed an application for SSI on June 21, 2023, initially alleging disability beginning September 17, 2017. D.E. 6 ("Administrative Record," "Record," or "R.") 80. Plaintiff later amended the alleged onset date to June 21, 2023, the application date. *Id.* 219. The SSA denied the claim initially on September 25, 2023, *id.* 103–06, and again upon reconsideration on January 16, 2024, *id.* 108–10. Plaintiff requested a hearing on March 13, 2024. *Id.* 111.

Administrative Law Judge Kenneth Ayers (the "ALJ") conducted an online video hearing on September 17, 2024 (the "Hearing"). *Id.* 36–61. On October 9, 2024, the ALJ issued a written decision denying Plaintiff's application. *Id.* 18–35. Plaintiff requested review on December 6, 2024, *id.* 170–72, and on August 29, 2025, the Appeals Council denied review, *id.* 1–6. The ALJ's decision therefore became the Commissioner's final decision.

## B. The ALJ's Five-Step Sequential Evaluation Process

To qualify for SSI, a claimant must show that he is disabled within the meaning of the Act. 42 U.S.C. § 1382c(a)(3)(A). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. *Id.* The impairment must be of such severity that the claimant is not only unable to perform his previous work, but, considering his age, education, and work experience, cannot engage in other substantial gainful work that exists in the national economy. *Id.* § 1382c(a)(3)(B).

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five."

*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 21, 2023, the application date. R. 23.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that significantly limits the plaintiff's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Here, the ALJ found three severe impairments: (1) depressive disorder with psychotic features; (2) anxiety disorder; and (3) post-traumatic stress disorder ("PTSD"). R. 23. The ALJ found Plaintiff's diabetes mellitus, hypothyroidism, and obesity non-severe. *Id.* 23–24.

At step three, the ALJ determines whether the plaintiff's impairments meet or medically equal the severity of an impairment in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1.[5] 20 C.F.R. § 416.920(d). The ALJ considered Listings 12.04, 12.06, and 12.15, and concluded that Plaintiff did not meet or medically equal a Listing. R. 24–25. In assessing the paragraph B criteria for those Listings, the ALJ found a moderate limitation in each of the four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.*[6] The ALJ also concluded, in one sentence, that "the evidence fails to

[5] A "Listing" is an impairment in the Listing of Impairments. Listing 12.03 concerns schizophrenia and other psychotic disorders; Listing 12.04 concerns depressive, bipolar, and related disorders; Listing 12.06 concerns anxiety and obsessive-compulsive disorders; and Listing 12.15 concerns trauma- and stressor-related disorders. 20 C.F.R. pt. 404, subpt. P, app. 1.

[6] For Listings 12.03, 12.04, 12.06, and 12.15, paragraph B requires an "extreme" limitation in one, or "marked" limitations in two, of the four functional areas. *Id.* §§ 12.03B, 12.04B, 12.06B, 12.15B. *See infra* Section III.B.

establish the presence of the 'paragraph C' criteria." *Id.* 25.[7] The ALJ did not address Listing 12.03. *See id.*

Before step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC"), meaning the most the plaintiff can still do despite his limitations. 20 C.F.R. §§ 416.920(e), 416.945(a)(1). Here, the ALJ found that Plaintiff could perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> he can understand, remember and carry out simple instructions; can never work at a production rate of pace (e.g., assembly line work or jobs with hourly production quotas) but can perform work that has end of day production quotas; can occasionally interact with supervisors and coworkers, never interact with the public, and tolerate no more than occasional changes in work setting.

R. 25. The ALJ further found that Plaintiff has no past relevant work. *Id.* 29.

At step five, the ALJ decides whether the plaintiff, considering his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). Relying on the vocational expert ("VE"), the ALJ determined that Plaintiff could perform the occupations of floor waxer (DOT 381.687-034), with 118,000 jobs nationally; hand packager (DOT 920.587-018), with 69,000 jobs nationally; and kitchen helper (DOT 318.687-010), with 129,000 jobs nationally. R. 30. The ALJ therefore found Plaintiff not disabled. *Id.* 30–31.

### C. Plaintiff's Appeal

Plaintiff commenced this action challenging the Commissioner's final decision. Compl. After the Commissioner filed the Record, Plaintiff filed his opening brief, D.E. 9 ("Brief" or "Br."),

---

[7] Paragraph C is an alternative route for certain "serious and persistent" mental disorders and requires, among other things, a two-year history, ongoing treatment or support, and marginal adjustment. *Id.* §§ 12.00G2, 12.03C, 12.04C, 12.06C, 12.15C. *See infra* Section III.B.

the Commissioner opposed, D.E. 11 ("Opposition" or "Opp'n"), and Plaintiff replied, D.E. 12 ("Reply").

Plaintiff raises four principal arguments, all arising at steps three and four of the sequential evaluation. *First*, Plaintiff challenges two related aspects of the ALJ's step three analysis: the failure to consider Listing 12.03 and the finding that Plaintiff was only moderately limited in interacting with others. Br. at 19–26. Plaintiff contends that Listing 12.03, which addresses schizophrenia and other psychotic disorders, should have been considered because the Record contains evidence that Plaintiff satisfies paragraph A of that Listing. *Id.* at 19–20, 23–24.[8] As to interacting with others, although the ALJ assigned Plaintiff a "moderate" paragraph B limitation in that area, the RFC prohibited Plaintiff from interacting with the public and limited him to only occasional interaction with supervisors and coworkers. R. 24–25. Plaintiff argues that those restrictions—together with evidence of paranoia, auditory hallucinations, avoidance of public places, and difficulty controlling aggressive reactions around others—are difficult to reconcile with the ALJ's conclusion that his ability to interact with others remained only moderately impaired. Br. at 21–23. Plaintiff therefore asserts that the ALJ did not adequately explain the relationship between the evidence, the paragraph B rating, and the social limitations ultimately included in the RFC. *Id.*

*Second*, Plaintiff challenges the ALJ's treatment of the alternative paragraph C criteria for these Listings at step three. *Id.* at 26–27. The ALJ disposed of paragraph C in a single sentence, concluding that "the evidence fails to establish the presence of the 'paragraph C' criteria." R. 25. Plaintiff asserts that this one-sentence conclusion does not meaningfully address evidence that his

---

[8] Plaintiff also argues that the Record satisfies the paragraph A criteria of Listings 12.04 and 12.06, which the ALJ did consider. *Id.* at 24–26.

psychiatric disorders persisted despite ongoing treatment and a medical assessment that Plaintiff satisfied the paragraph C criteria, including the requirement of only marginal adjustment to changes in his environment or demands not already part of his daily life. Br. at 26–27; R. 1821. According to Plaintiff, the absence of further explanation prevents meaningful review of the ALJ's paragraph C finding. Br. at 26–27.

Plaintiff's other two arguments challenge the ALJ's evaluation of medical opinion and symptom evidence that informed both the step three findings and the RFC.

*Third,* Plaintiff challenges the ALJ's evaluation of two opinions from Advanced Practice Nurse Firmin Langyin, one of Plaintiff's psychiatric medication management providers. *Id.* at 27–37. In August 2023, Langyin completed a Work First New Jersey medical examination form indicating that Plaintiff's psychiatric conditions limited his ability to function and participate in gainful employment or occupational training. R. 553 (the "August 2023 Opinion"). Langyin also treated Plaintiff during a medication management visit that day. In a separate clinical note from that encounter, Langyin documented Plaintiff's reports of auditory hallucinations and assessed diminished motivation, diminished interest, and difficulty functioning in public. *Id.* 386–87 (the "August 2023 Treatment Note").

On August 30, 2024, approximately one year later, Langyin completed a more detailed mental function questionnaire evaluating Plaintiff's ability to perform particular functions required in competitive employment. *Id.* 1817–22 (the "August 2024 Opinion"). The August 2024 Opinion used defined categories to rate specific work abilities and separately required Langyin to rate the four paragraph B areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). *Id.* 1819–21. Langyin rated numerous abilities "seriously limited, but not

precluded," found Plaintiff unable to meet competitive standards in several areas involving stress, adaptation, and social functioning, found no useful ability to maintain basic standards of neatness and cleanliness, and rated all four paragraph B areas "marked." *Id.*

Plaintiff claims that the ALJ erred by treating the August 2024 Opinion's individual ratings as essentially "moderate," finding Langyin's separate marked paragraph B ratings internally inconsistent with those individual findings, and failing to explain whether the August 2024 Opinion was supported by Langyin's treatment findings and consistent with the longitudinal record. Br. at 27–37.

*Fourth*, Plaintiff argues that the RFC does not adequately account for the limiting effects of his psychiatric symptoms. *Id.* at 37–40. Plaintiff points to evidence of recurrent auditory and visual hallucinations, panic attacks, dissociative episodes during which he loses track of time, chronic suicidal ideation, fear of leaving home or being around others, difficulty maintaining personal hygiene, and episodes of anger or aggression. *Id.* Although the ALJ discussed several of these symptoms when summarizing the record, Plaintiff contends that the ALJ did not sufficiently explain what functional consequences he attributed to them, particularly with respect to remaining on task, maintaining regular attendance, interacting appropriately with others, tolerating ordinary workplace stress, and adapting to changes in a work setting, or why the RFC adequately accommodated those consequences. *Id.*

Plaintiff does not separately challenge the ALJ's findings at steps one, two, or five. Based on alleged errors at steps three and four, he asks the Court to reverse the Commissioner's decision or, alternatively, remand for further proceedings. Br. at 40; Reply at 13.

## II. LEGAL STANDARD

Judicial review of an SSA determination is based upon the pleadings and the transcript of the record. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence supporting the ALJ's factual findings. *See id.* § 405(g); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

"Substantial evidence" means "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). But a single piece of evidence does not satisfy the substantial evidence test when the Commissioner ignores, or fails to resolve, a conflict created by countervailing evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

If faced with conflicting evidence in the record, the Commissioner must adequately explain the reason for rejecting or discounting competent evidence. *See Kirby v. Comm'r of Soc. Sec.*, No. 16-5159, 2017 WL 4330361, at *5 (D.N.J. Sept. 29, 2017). The ALJ must provide enough reasoning to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). The ALJ's findings must be accompanied by a "clear and satisfactory explication" of their basis, and evidence may not be rejected "for no reason or for the wrong reason." *Cotter v. Harris*, 642 F.2d 700, 704, 706 (3d Cir. 1981). That duty is especially important where the record contains conflicting probative medical evidence; in that circumstance, the Third Circuit has recognized a "particularly acute need" for an explanation of the ALJ's reasoning. *Fargnoli v. Massanari*, 247 F.3d 34, 42–44 (3d Cir. 2001). The Court reads the ALJ's decision as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The Court may not, however,

cure a gap in the ALJ's reasoning by supplying its own analysis of evidence the ALJ did not rely on. *Fargnoli*, 247 F.3d at 44 n.7.

## III. DISCUSSION

Plaintiff's four challenges converge on one issue: whether the ALJ properly evaluated the severity and work-related effects of Plaintiff's psychiatric impairments. The Court concludes that he did not. Remand is required principally because the ALJ's two stated reasons for finding Langyin's August 2024 Opinion unpersuasive leave key steps in his reasoning unstated.

*First*, the ALJ characterized several of Langyin's function-by-function ratings as appearing to fall within the "moderate" category, even though the mental function questionnaire in the August 2024 Opinion used different, expressly defined rating categories, without explaining how those ratings corresponded to "moderate" limitations. R. 29, 1819–20. *Second*, the ALJ partially discounted Langyin's August 2024 Opinion because more recent mental status examinations showed "stability" and, in the ALJ's view, supported "no more than moderate limitations." *Id.* 29. Those findings identify the evidence the ALJ viewed as inconsistent with Langyin's Opinion, but the ALJ does not connect that evidence to Langyin's specific functional restrictions. Langyin found, among other things, that Plaintiff could not meet competitive standards in dealing with normal work stress, responding appropriately to routine workplace changes, and maintaining socially appropriate behavior, and that he had no useful ability to maintain basic standards of neatness and cleanliness. *Id.* 1820. The ALJ never tied findings such as intact memory and concentration, cooperative behavior, or coherent thought processes to an ability to perform those particular functions satisfactorily on a sustained basis. *See id.* 29.

Because those restrictions bear on the paragraph B and paragraph C findings at step three and on the RFC, the Court cannot determine whether the ALJ would reach the same paragraph B,

paragraph C, and RFC findings after properly evaluating the August 2024 Opinion. Accordingly, the Court will **VACATE** and **REMAND** for further proceedings.

**A. The ALJ Did Not Adequately Evaluate the August 2024 Opinion**

Because Plaintiff filed his SSI claim after March 27, 2017, the revised medical opinion regulations apply. 20 C.F.R. § 416.920c. Under those regulations, an ALJ does not defer or give controlling weight to any medical opinion. *Id.* § 416.920c(a). Instead, the ALJ evaluates the persuasiveness of each medical opinion using several factors, of which "supportability" and "consistency" are the most important. *Id.* § 416.920c(b)(2), (c)(1)–(2). Supportability focuses on the source's own objective medical evidence and supporting explanations; consistency focuses on how the opinion accords with evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(1)–(2). The ALJ must explain how both factors were considered. *Id.* § 416.920c(b)(2). Against that framework, the Court first reviews the three Langyin records relevant to the ALJ's evaluation—the August 2023 Opinion, the August 2023 Treatment Note, and the August 2024 Opinion—including the rating categories used in the August 2024 Opinion. The Court then addresses the two reasons the ALJ gave for finding the August 2024 Opinion unpersuasive, why those reasons are inadequately explained, and why that error requires remand.

*1. Langyin's Opinions and treatment records*

Section 416.920c does not require an ALJ to use the words "supportability" and "consistency" in a particular place. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639–40 (3d Cir. 2024). An ALJ may explain those considerations elsewhere in the decision, but the decision still must allow the Court to identify the ALJ's reasons for finding an opinion persuasive or unpersuasive. *Id.* at 639–40. When conflicting probative evidence bears on that determination, the ALJ must explain how the conflict was resolved. *Fargnoli*, 247 F.3d at 42–44.

Because supportability concerns the source's own supporting evidence and explanations, the Court considers Langyin's treatment notes alongside the August 2024 Opinion. Langyin reported monthly medication management contact with Plaintiff since November 29, 2022, and the Record contains Langyin's medication management notes from the relevant period. R. 1817; *see, e.g.*, *id.* 386–87. The August 2023 Treatment Note is one such record. It is separate from the August 2023 Opinion and records Plaintiff's reported symptoms and Langyin's clinical assessment during treatment. *Id.* 386–87.

The August 2023 Opinion is a Work First New Jersey medical examination form. Langyin completed it on August 11, 2023, approximately seven weeks after Plaintiff filed for SSI. On that form, Langyin indicated that Plaintiff's psychiatric diagnoses limited his ability to participate in gainful employment or occupational training and wrote that Plaintiff was "unable to function and work" because of symptoms of psychosis, depression, and anxiety. *Id.* 553. Langyin also indicated that the barrier to employment was expected to last longer than twelve months. *Id.*

The August 2023 Treatment Note is a separate clinical note from Langyin's medication management visit that day. *Id.* 386–87. During that visit, Plaintiff reported auditory hallucinations—hearing his mother's voice warning him to be careful—along with depression, anxiety, and stress from a pending eviction. *Id.* 386. Although the mental status examination documented intact memory and good attention and concentration, Langyin assessed that Plaintiff's depression caused a lack of motivation and interest and left him "not able to function," and that his anxiety left him "not able to go to public areas" and also "not able to function." *Id.* 387.

The ALJ was correct about one limitation listed on the August 2023 Opinion. To the extent Langyin concluded on the Work First form that Plaintiff could not work, that determination concerned an issue reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3)(i). The ALJ was

therefore not required to evaluate that ultimate work conclusion under § 416.920c. R. 29. Plaintiff argues that the ALJ mischaracterized Langyin's opinion because the statement that Plaintiff was "unable to function and work" does not appear in the August 2024 Opinion. Br. at 29–30. The statement appears in the August 2023 Opinion. R. 553. Plaintiff therefore has not shown that the ALJ mischaracterized the August 2023 Opinion.

The August 2023 Treatment Note nevertheless remains relevant to supportability because although the ALJ did not have to give weight to Langyin's ultimate conclusion that Plaintiff could not work, the ALJ did have to consider whether the functional restrictions in the August 2024 Opinion were supported by Langyin's own clinical findings, including those recorded in the August 2023 Treatment Note. The treatment note documented auditory hallucinations, diminished motivation and interest, and difficulty functioning in public. *Id.* 386–87. More than a year later, Langyin identified similar problems—including depression, lack of motivation, paranoia around others, isolation, PTSD, and intrusive thoughts—when explaining several of the restrictions in the August 2024 Opinion. *Id.* 1820.

The August 2024 Opinion provided detailed ratings of Plaintiff's ability to perform specific work functions. On August 30, 2024—less than three weeks before the Hearing—Langyin completed a six-page Mental Impairment Medical Source RFC Questionnaire that assessed Plaintiff's ability to perform specific work functions on a sustained basis. *Id.* 1817–22. The questionnaire identified Plaintiff's psychiatric diagnoses and ongoing treatment and reported continuing symptoms, including diminished motivation and interest, isolation, and nightmares. *Id.* 1817.

Langyin also provided narrative explanations for several of the more restrictive ratings. *Id.* 1818–20. Among other symptoms, Langyin identified Plaintiff's depressed mood, diminished

interest, sleep disturbance, decreased energy, difficulty concentrating or thinking, and fatigue. *Id.* 1818. In the narrative portion addressing unskilled work, Langyin explained that Plaintiff was depressed, lacked motivation and interest in activities, was sometimes paranoid around people, and isolated himself. *Id.* 1820. In addressing social and travel limitations, Langyin cited Plaintiff's chronic PTSD and intrusive thoughts. *Id.*

The questionnaire used one set of defined categories for individual work functions and separate ratings for the four paragraph B areas. For the function-by-function ratings, "Seriously limited, but not precluded" meant that Plaintiff's ability was "seriously limited and less than satisfactory, but not precluded in all circumstances." *Id.* 1819. "Unable to meet competitive standards" meant that Plaintiff could not satisfactorily perform the activity independently, appropriately, effectively, and on a sustained basis in a regular work setting. *Id.* Finally, "no useful ability to function" meant an extreme limitation preventing performance of the activity in a regular work setting. *Id.*

Using those definitions, Langyin rated many basic abilities required for unskilled work as "seriously limited, but not precluded," including maintaining attention for two-hour segments; maintaining regular attendance and punctuality; sustaining an ordinary routine; working near others without undue distraction; making simple work decisions; completing a normal workday and workweek without psychologically based interruptions; and performing at a consistent pace without unreasonable rest periods. *Id.* Langyin assigned more restrictive ratings to several additional work functions: Plaintiff was unable to meet competitive standards in responding appropriately to routine workplace changes and dealing with normal work stress. *Id.* 1820. Langyin likewise found Plaintiff unable to meet competitive standards in interacting appropriately with the public, maintaining socially appropriate behavior, traveling in unfamiliar

places, and using public transportation, and assessed "no useful ability to function" in maintaining basic standards of neatness and cleanliness. *Id.*

The questionnaire separately asked Langyin to rate the four paragraph B areas, and Langyin rated all four "marked." *Id.* 1821. Langyin also checked the paragraph C criterion describing a serious and persistent disorder with only marginal adjustment and minimal capacity to adapt to environmental changes or new demands and estimated that Plaintiff's impairments or treatment would cause approximately one absence per month. *Id.* Langyin signed the August 2024 Opinion on August 30, 2024. *Id.* 1822.

*2. The ALJ did not adequately explain the asserted internal inconsistency*

As previewed above, the ALJ found the August 2024 Opinion unpersuasive for two reasons. *First*, the ALJ compared the function-by-function ratings with the separate paragraph B ratings and found the Opinion "internally inconsistent." *Id.* 29. The ALJ stated that the function-by-function ratings "appeared to fall into the moderate category," while Langyin rated all four paragraph B areas "marked," and also observed that the questionnaire's classifications were "not policy compliant." *Id.* *Second*, the ALJ concluded that more recent mental status examinations showed stability and supported "no more than moderate limitations." *Id.*[9]

The ALJ did not adequately explain the first reason. The questionnaire did not define "seriously limited, but not precluded" as moderate; rather, it defined that category as "seriously limited and less than satisfactory, but not precluded in all circumstances." *Id.* 1819. It separately defined "unable to meet competitive standards" as an inability to perform the activity satisfactorily on a sustained basis and "no useful ability to function" as an extreme limitation. *Id.* Several

[9] The ALJ referred to the questionnaire as an "August 30, 2021" opinion, although Langyin signed it on August 30, 2024. R. 29, 1822. That discrepancy does not independently warrant remand.

functions at issue—including responding to routine workplace changes, dealing with normal work stress, interacting appropriately with the public, maintaining socially appropriate behavior, and maintaining basic neatness and cleanliness—were rated in those more restrictive categories. *Id.* 1820. Yet the ALJ treated the function-by-function ratings as though they "appeared" moderate while also stating that the questionnaire's categories did not correspond to agency policy terminology. *Id.* 29. If the form's categories did not correspond directly to the agency's severity scale, the ALJ needed to explain how he translated those categories into "moderate" and why that translation made the marked paragraph B ratings internally inconsistent. The decision does not provide that explanation.

To be sure, the ALJ remained free to find the August 2024 Opinion unpersuasive if Langyin's supporting explanations were weak or the Opinion was inconsistent with other evidence. 20 C.F.R. § 416.920c(c)(1)–(2). The ALJ nevertheless had to describe the Opinion accurately and explain what evidence undermined Langyin's restrictions.

*3. The ALJ did not adequately reconcile the August 2024 Opinion with the treatment record*

The ALJ also relied on more recent "stable" mental status examinations but did not explain how those examinations undermined the specific work restrictions that Langyin assessed. The Commissioner correctly notes that the ALJ discussed treatment records elsewhere in the decision, and some of those records support the ALJ's view. For example, on May 31, 2024, Plaintiff reported that his mood was slowly improving, while the examination showed calm and cooperative behavior, a coherent and linear thought process, good memory, good attention and concentration, and fair insight and judgment. R. 1325–27. Those findings could reasonably bear on some of Langyin's ratings.

The same May 31 record, however, documented symptoms directly relevant to the functions addressed in the August 2024 Opinion. Plaintiff reported that approximately one week before that evaluation, he had thought about jumping in front of a train, that he heard his mother's voice several times per week while in public, that he saw a person or shadows, and that he continued to experience chronic flashbacks. *Id.* The provider assessed a moderate historical suicide risk based on chronic suicidal ideation. *Id.* An April 5, 2024 therapy note likewise recorded auditory and visual hallucinations that left Plaintiff feeling "frazzled," difficulty concentrating because of those hallucinations, and passive suicidal ideation "most of the time." *Id.* 1333–34. Earlier records documented dissociative episodes and continuing hallucinations as well. *See, e.g.*, *id.* 669, 730–31, 1004.

The ALJ did not explain why the relatively benign findings from Plaintiff's mental status examinations undermined Langyin's more restrictive functional findings. For example, the ALJ did not explain how findings of good memory and concentration, along with cooperative behavior during a treatment visit, showed that Plaintiff could respond appropriately to routine workplace changes, deal with normal work stress, maintain socially appropriate behavior, or maintain basic standards of neatness and cleanliness on a sustained basis. *Id.* 29, 1820. In *Zaborowski*, by contrast, the ALJ tied the competing medical opinions to record evidence and explained why one psychologist's opinion fit the record and why a psychiatrist's restrictions did not. 115 F.4th at 639–40. Stability during treatment does not, by itself, establish a claimant's ability to function under workplace stress. *Morales*, 225 F.3d at 319.[10]

[10] *Morales* predates § 416.920c's current medical opinion regime; the Court relies only on its distinction between stability in treatment and functioning under workplace stress.

The Commissioner offers a more detailed comparison of the August 2024 Opinion and the treatment record, including notes showing intact memory and concentration, normal thought processes, appropriate behavior, improvement, and medication tolerance. Opp'n at 10–15. Commissioner's counsel's explanation, however, cannot supply reasoning the ALJ did not. The Commissioner also characterizes the August 2024 Opinion as finding Plaintiff capable of meeting competitive standards in "14 of 16" abilities required for unskilled work. *Id.* at 11–12. In the Court's view, this "14 of 16" characterization obscures the distinctions on the questionnaire. Many of those fourteen abilities were rated "seriously limited, but not precluded," which the questionnaire defines as seriously limited and less than satisfactory, while other functions were rated "unable to meet competitive standards." R. 1819–20. The ALJ did not make the "14 of 16" comparison. The Court may consider reasoning elsewhere in the ALJ's decision, but it may not affirm based on counsel's new explanation for discounting Langyin's ratings. *See Zaborowski*, 115 F.4th at 639; *Fargnoli*, 247 F.3d at 44 n.7.

This error could affect the disability determination because two of Langyin's restrictions correspond directly to the VE's testimony. Langyin found Plaintiff unable to meet competitive standards in responding to routine workplace changes and found no useful ability to maintain basic standards of neatness and cleanliness. R. 1820. The VE testified that an individual who could not tolerate occasional changes in the work setting could not sustain competitive employment, *id.* 58, and that repeated unacceptable hygiene could lead to termination, *id.* 58–59. If, after reevaluation, the ALJ found either restriction persuasive, the RFC or step five result could change. The Court therefore cannot treat the error as harmless.

**B. The ALJ Must Reassess the Paragraph B and Paragraph C Findings**

The ALJ's error in evaluating the August 2024 Opinion also bears on Plaintiff's step three arguments. In interacting with others, the ALJ found a moderate limitation after reciting that

Plaintiff does not engage in social activities, has no friends, has difficulty getting along with family, friends, and neighbors, stated that he could be "very violent" and therefore stays home to avoid hurting people, and testified that he could not control his emotions and had knocked someone out during a confrontation at a grocery store. R. 24. In adapting or managing oneself, the ALJ likewise found a moderate limitation after reciting that Plaintiff forgets to bathe, groom, and shave; needs reminders for personal care; does not cook; avoids going out because he fears becoming violent; cannot control his thoughts or behavior; showers and brushes his teeth only once a week; repeatedly wears the same clothes; and avoids doing laundry because he fears having an episode. *Id.* 24–25.

The RFC's social restrictions do not by themselves require a marked or extreme paragraph B rating. At steps two and three, paragraph B provides a broad rating of four areas of mental functioning to determine the severity of a mental impairment. The RFC, by contrast, identifies the particular work activities a claimant can still perform despite his limitations. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209–14 (3d Cir. 2019). Plaintiff therefore cannot establish a marked or extreme paragraph B limitation merely by pointing to the RFC's prohibition on public interaction. Br. at 22–23. The issue, nevertheless, is whether the ALJ explained why the evidence he credited supported only a moderate limitation in interacting with others. Here, the ALJ's own discussion identifies evidence that could support more serious social and adaptive limitations, yet the decision does not explain why that evidence is consistent with only moderate limitations.

At step three, the ALJ recited that Plaintiff had no friends, avoided public settings because he feared becoming violent, needed reminders for personal care, and reported showering and brushing his teeth only once a week. R. 24–25. The RFC then prohibited public interaction, limited Plaintiff to occasional interaction with supervisors and coworkers, and limited workplace

changes to occasional. *Id.* 25. Langyin, meanwhile, rated interacting with others and adapting or managing oneself as marked and assessed more severe restrictions in workplace changes, social behavior, and hygiene. *Id.* 1820–21. None of those facts, standing alone, requires a marked or extreme rating. Taken together, however, they required the ALJ to explain why he still assessed only moderate limitations in interacting with others and adapting or managing oneself. The ALJ did not.

Two cases from this District cited by Plaintiff illustrate the need for that explanation when the record contains substantial evidence of more severe social limitations. In *Naomi W. v. O'Malley*, the Court concluded that an RFC permitting occasional supervisor and coworker interaction but no public interaction suggested a limitation greater than moderate where the ALJ had not sufficiently reconciled substantial evidence of social dysfunction. No. 22-3393, 2024 WL 1928477, at *6–8 (D.N.J. May 1, 2024). In *Caren C. v. Bisignano*, the Court reached a similar conclusion where the ALJ relied on cooperative behavior with providers but did not address significant contrary evidence concerning interpersonal functioning. No. 23-2794, 2025 WL 1378732, at *8 (D.N.J. May 13, 2025). Neither case holds that a prohibition on public interaction automatically requires a marked or extreme rating. But both show the need to explain a moderate rating when the record contains substantial contrary evidence concerning social functioning.

In response, the Commissioner relies on *Kristin W. v. Commissioner of Social Security*, No. 24-8185, 2025 WL 2058199, at *6–7 (D.N.J. July 23, 2025), and *Anthony P. v. Commissioner of Social Security*, No. 21-17714, 2023 WL 6806008, at *4, *9 (D.N.J. Oct. 16, 2023). Opp'n at 8–9. The Commissioner's reliance on these cases is misplaced. *Kristin W.* addressed whether an RFC with social and task restrictions adequately conveyed credited medical limitations, while *Anthony P.* principally addressed the adequacy of the RFC and hypothetical and a separate

paragraph C challenge. Neither addressed whether an ALJ may leave unexplained a moderate interaction rating after reciting severe social isolation and violence concerns and then imposing no public contact and only occasional supervisor and coworker contact.

The ALJ's paragraph C finding should also be reconsidered on remand. Paragraph C of Listings 12.03, 12.04, 12.06, and 12.15 addresses serious and persistent mental disorders and requires, among other things, a medically documented history of the disorder for at least two years, ongoing treatment or support that diminishes symptoms, and marginal adjustment, meaning minimal capacity to adapt to changes or new demands. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.00G2, 12.03C, 12.04C, 12.06C, 12.15C. The ALJ's paragraph C analysis consists only of the statement that "the evidence fails to establish the presence of the 'paragraph C' criteria." R. 25. In the August 2024 Opinion, Langyin expressly checked the portion of the questionnaire stating that Plaintiff had a medically documented disorder of at least two years' duration, remained seriously and persistently impaired despite ongoing treatment, had achieved only marginal adjustment, and had minimal capacity to adapt to environmental changes or new demands. *Id.* 1821.

The Court does not determine that Plaintiff satisfies paragraph C. The Commissioner points to improvement with outpatient treatment and relatively benign mental status findings and argues that the ALJ may weigh that evidence. Opp'n at 7–10. The ALJ later found the August 2024 Opinion unpersuasive, but that determination must be reconsidered for the reasons explained above. R. 29. At step three, however, the ALJ did not explain why paragraph C was unsatisfied despite Langyin's contrary assessment of marginal adjustment. *Id.* 25, 1821. And although the ALJ discussed improvement elsewhere in the decision, he did not explain why that improvement

showed more than the minimal capacity to adapt contemplated by paragraph C. *See id.* 27–29. On remand, the ALJ should reassess paragraph C after reevaluating the August 2024 Opinion.

Because the paragraph B and paragraph C findings must be reconsidered, the Court also addresses Plaintiff's separate argument that the ALJ should have considered Listing 12.03. That Listing addresses schizophrenia and other psychotic disorders and incorporates the same paragraph B and paragraph C criteria that the ALJ must reassess on remand. *See* Br. at 19–20, 23–26. The ALJ considered Listings 12.04, 12.06, and 12.15, but not Listing 12.03. R. 24–25. Listing 12.03 may be satisfied by paragraph A and paragraph B, or by paragraph A and paragraph C. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.03. Paragraph A requires medical documentation of at least one of three criteria, including delusions or hallucinations. *Id.* § 12.03A. Plaintiff points to repeated auditory and visual hallucinations and dissociative episodes and argues that this evidence satisfies paragraph A. Br. at 23–24; *see, e.g.*, R. 386, 669, 792–94, 1004, 1325–26, 1333–34. The record also contains a December 2023 diagnosis of schizoaffective disorder, bipolar type, currently depressed. *Id.* 794.

The Commissioner responds that the omission was harmless because Listing 12.03 uses the same paragraph B criteria as the Listings the ALJ did consider. Opp'n at 8. That argument depends on the validity of the ALJ's paragraph B and paragraph C findings. If Plaintiff satisfies neither paragraph B nor paragraph C, Listing 12.03 cannot be satisfied regardless of whether paragraph A is met. *See Pendergrass v. Comm'r Soc. Sec.*, No. 24-2777, 2026 WL 608753, at *5 & n.8 (3d Cir. Mar. 4, 2026). Here, however, the Court has concluded that the paragraph B and paragraph C findings require reconsideration. The Court therefore cannot rely on those same findings to deem the omission of Listing 12.03 harmless.

The Court does not decide whether Plaintiff satisfies paragraph A or Listing 12.03. On remand, the ALJ should expressly consider Listing 12.03 together with the reassessed paragraph B and paragraph C evidence. Because remand is required on the grounds discussed above, the Court need not separately decide Plaintiff's remaining argument concerning the ALJ's evaluation of his psychiatric symptoms.[11]

**C. The Court Will Remand for Further Proceedings**

Further proceedings, rather than an award of benefits, are appropriate. The Record contains relatively normal mental status findings and periods of improvement, as well as recurrent hallucinations, suicidal ideation, dissociation, social avoidance, and Langyin's restrictive functional ratings. *See* R. 1325–27, 1333–34, 1819–21. Determining what functional limitations follow from that conflicting evidence is an administrative factfinding task that the Court may not perform. *See Morales*, 225 F.3d at 317.

On remand, the ALJ should reevaluate the August 2024 Opinion using the questionnaire's actual definitions and explain which treatment evidence supports or conflicts with the material restrictions, including restrictions involving routine workplace changes, normal work stress, socially appropriate behavior, and hygiene. The ALJ should then reassess the paragraph B and paragraph C criteria, expressly consider Listing 12.03, reassess the work-related effects of Plaintiff's psychiatric symptoms, formulate any revised RFC, and obtain additional vocational testimony if necessary.

---

[11] Specifically, Plaintiff argues that the ALJ failed to adequately account for the limiting effects of his hallucinations, dissociative episodes, panic symptoms, suicidal ideation, and other psychiatric symptoms. Br. at 37–40; Reply at 12–13. The ALJ discussed many of those symptoms, including hallucinations and suicidal thoughts. R. 27–29. However, their functional effects overlap with the limitations that the ALJ must reassess in evaluating the August 2024 Opinion and any resulting RFC. On remand, the ALJ should therefore reconsider the extent to which Plaintiff's psychiatric symptoms affect his ability to perform work-related functions.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's appeal will be **GRANTED**, the ALJ's denial of benefits will be **VACATED**, and the matter will be **REMANDED** to the SSA for further proceedings consistent with this Opinion. An appropriate Order follows.

Dated: October 1, 2026

Evelyn Padin, U.S.D.J.